**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TELEBRANDS CORP. and PROMETHEUS BRANDS, LLC,<br><br>Plaintiffs,<br>v.<br>EVERSTAR MERCHANDISE CO., LTD and TOMSON MERCHANDISE CO., LTD.,<br><br>Defendants. | Civil Action No. 17-2878 (JLL) (JAD)<br><br>OPINION |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court by way of Plaintiffs' Motion for Leave to File a Second Amended Complaint. (ECF No. 61). In accordance with Federal Rule of Civil Procedure 78, the Court did not hear oral argument on Plaintiffs' application. Upon careful consideration of the parties' submissions, and for the reasons stated below, Plaintiffs' Motion is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**.

**I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY[1]**

This matter concerns the parties' competing lines of decorative lighting products. Plaintiffs commenced this case by filing a Complaint on April 26, 2017. (ECF No. 1). On May 10, 2017, Plaintiffs filed a First Amended Complaint, (ECF No. 8), which remains their operative pleading in this matter.

---

[1] Unless otherwise noted, the Court has drawn the facts described herein from the First Amended Complaint. (ECF No. 8).

In their First Amended Complaint, Plaintiffs allege that Plaintiff Telebrands Corporation ("Telebrands") developed the STAR SHOWER®[2] lighting product, which it introduced in connection with the 2015-2016 holiday season. (First Am Compl. ¶ 12, ECF No. 8). The STAR SHOWER® product produces "thousands of discrete points of light", and serves as a "convenient and safe alternative to setting up string lights as decorative lighting for a house or other building." (Id.). Telebrands sold several millions units of its STAR SHOWER® product during the 2015-2016 holiday season, (id. ¶ 13), and thereafter expanded its product line to include the STAR SHOWER PATRIOT™ (which introduced new colored lights) and STAR SHOWER MOTION™ (which featured the ability to move the points of light in patterns). (Id. ¶ 11).

Plaintiffs allege that the STAR SHOWER® product "includes many unique and innovative features", (id. ¶ 14), and, as such, is covered by multiple patents, including U.S. Patent No. 9,546,775 (the "'775 Patent"), entitled "Decorative Lighting Apparatus Having Two Laser Light Sources", (id. ¶ 14-15), and U.S. Patent No. 9,562,673 (the "'673 Patent"), entitled "Decorative Lighting Apparatus Having An Attenuation Assembly." (Id. ¶¶ 16-17). Telebrands is the "assignee and the owner of all right, title and interest in and to" both patents. (Id. ¶¶ 14-16). Plaintiffs further allege that Plaintiff Prometheus Brands LLC owns the mark STAR SHOWER® for a laser light projector under U.S. Trademark Registration No. 4,833,721, that Telebrands is the exclusive licensee for that mark, and that Telebrands has continuously used the STAR SHOWER® mark in interstate commerce since at least June 18, 2015. (Id. ¶ 18-20).

Plaintiffs allege that Defendants have "made, used, sold, offered for sale, and/or imported into the United States infringing lighting products" called LASER SHOWER, LASER SHOWER

---

[2] When referring to product names in their pleadings, Plaintiffs have written out each such name in capital letters. (See generally, Am. Compl., ECF No. 8). For the sake of clarity, the Court will use the same convention herein.

2

WITH SNOWFLAKE, MOTION LASER SHOWER, and STAR LASER, (id. ¶ 26), and that Defendants' STAR LASER product infringes several claims of both the '775 Patent and the '673 Patent. (Id. ¶ 27-32). Plaintiffs also allege that each of Defendants' LASER SHOWER, LASER SHOWER WITH SNOWFLAKE, MOTION LASER SHOWER, and STAR LASER marks "is a copy, counterfeit or colorable imitation of the STAR SHOWER Trademark." (Id. ¶ 33). Plaintiffs allege that Defendants used those marks without Plaintiffs' consent, (id. ¶ 34), that Defendants' use of those marks has caused or is likely to cause confusion amongst potential purchasers, (id. ¶ 35), and that Defendants did so "in bad faith so as to compete unfairly with Telebrands." (Id. ¶ 36). Plaintiffs allege that Defendants' use of the marks "have damaged and are likely to damage [Telebrands'] reputation and goodwill." (Id. ¶ 37).

Plaintiffs have asserted six causes of action based on the foregoing allegations: Infringement of the '775 Patent (Count 1); Infringement of the '673 Patent (Count Two); Trademark Infringement under Section 32 of the Lanham Act (Count Three); Unfair Competition under Section 43(a) of the Lanham Act (Count Four); Trademark Infringement and Unfair Competition under New Jersey common law (Count Five); and Unfair Competition under N.J.S.A. 56:4-1 et seq. (Count Six). (Id. ¶¶ 38-74). On July 20, 2017, Defendants filed an Answer as well as twelve counterclaims seeking declaratory judgments regarding the validity and enforcement of Plaintiffs' patents and trademark, as well as affirmative claims for unfair competition. (See generally Answer to First Amended Complaint and Counterclaims, ECF No. 42). On October 17, 2017, Plaintiffs filed a motion seeking leave to file a Second Amended Complaint. (ECF No. 61).

Plaintiffs' proposed Second Amended Complaint, (Decl. of Liza Walsh, Ex A, ECF No. 61-2) ("PSAC") differs from their existing pleading in multiple important respects. First, Plaintiffs have added factual allegations and a new cause of action regarding Defendants' alleged

3

infringement of United States Patent No. 9,752,761 (the "'761 Patent"), which issued on September 5, 2017. (See, e.g., PSAC ¶¶ 19-20, 48-52, 74-81, ECF No. 61-2). Second, Plaintiffs have expanded their existing patent and trademark infringement claims to include certain items in Defendants' 2017 line of decorative lighting products.³ (See, e.g., id. ¶¶ 30, 48-50, 53-55). Third, Plaintiffs have included a "false advertising" claim under Section 43(a) of the Lanham Act regarding Defendants' alleged misrepresentations about the energy emitted by certain of their lighting products. (Id. ¶¶ 31-43, 92-99). Defendants have opposed Plaintiffs' motion, which is now fully briefed. (ECF Nos. 65, 69).

Before proceeding, the Court must clarify one point regarding the somewhat unusual procedural situation at issue, and its impact on Plaintiffs' motion. As noted above, the First Amended Complaint is Plaintiffs' operative pleading. (ECF No. 8). Defendants responded to that pleading by filing an Answer, rather than a motion to dismiss. (ECF No. 42). While Plaintiffs now seek leave to add two new causes of action (infringement of the '761 Patent and "false advertising"), the balance of their proposed amendments involve expanding certain of their existing claims to account for the 2017 Products. (See generally, PSAC, ECF No. 61-2). Those claims use essentially the same language as their predecessors. (See, e.g., id. ¶¶ 58-65). While Defendants appear to attack Plaintiffs' amended counts in their entirety, (see Def. Br. at 4-15, ECF No. 65), the Court stresses that its review on this motion is limited to Plaintiffs' amendments. To the extent Plaintiffs originally asserted their claims in their First Amended Complaint (e.g., Plaintiffs' claims for infringement of the '775 Patent and '673 Patent regarding Defendants' earlier

---

³ The Court will use the term "2017 Products" to refer collectively to the 2017 STAR LASER, STARS LASER, NORTHERN LIGHTS LASER, and GALAXY LASER products. In their Proposed Second Amended Complaint, Plaintiffs allege that Defendants introduced each of these products in connection with the 2017-18 holiday season. (Id. ¶ 30).

4

products), those claims are not properly before the Court. See Danise v. Saxon Mortg. Servs., No. 15-6062 (JLL), 2016 U.S. Dist. LEXIS 124155, at *25 (D.N.J. Sep. 12, 2016) ("Although the Court considers whether an amendment is futile based on whether it would survive a motion to dismiss, the Court must consider whether the amendment itself is futile, not the claims in the original Complaint.") (internal citation omitted). This will necessarily create odd situations in which the same allegations that this Court finds insufficient in the context of Plaintiffs' proposed claims nevertheless remain in the pleading in connection with Plaintiffs' existing claims.

## II. **LEGAL DISCUSSION**

### a. **Standard Applicable on Motions for Leave to Amend Under Rule 15**

Federal Rule of Civil Procedure 15(a) governs a party's request for leave to amend a complaint and states, in pertinent part, that a party may amend its complaint after obtaining the Court's leave. Fed. R. Civ. P. 15 (a)(2); see also Rivera v. Valley Hospital, Inc., No. 15-5704 (JLL), 2017 WL 916436 at *2 (D. N.J. March, 08 2017) (quoting Wright & Miller § 1484, at 676). The Rule directs that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15 (a)(2). This standard ensures that claims are decided on their merits rather than on mere technicalities. See Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (citing Wright, Miller and Kane, Federal Practice and Procedure, Vol. 6 § 1471 at 505 (2d ed. 1990)).

While District Courts are vested with the broad discretion to grant or deny a motion for leave to amend under Rule 15(a), Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993) (noting "the grant or denial of leave to amend is a matter committed to the sound discretion of the district court"), they must exercise that discretion in light of "Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." Voilas et al. v. General Motors Corp., et al., 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted); Foman

5

v. Davis, 371 U.S. 178, 182 (1962) (finding "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion"). The United States Court of Appeals for the Third Circuit has interpreted that mandate as requiring that the District Court grant leave to amend in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive. Grayson v. Mayview State Hosp., 293 F.3d 103, 107-08 (3d Cir. 2002); see also Arthur v. Maersk, Inc., 434 F. 3d 196, 204 (3d Cir. 2006) (stating that, generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust.").

Defendants do not argue that Plaintiffs unduly delayed seeking amendment, that Plaintiffs' proposed amendments would cause any unfair prejudice, or that Plaintiffs are acting in bad faith. (See generally, Def. Br., ECF No. 65). Nor does it appear, from the Court's review of the docket for this matter, that such arguments might serve as a valid basis for denying Plaintiffs' motion. The Court will therefore focus its analysis on Defendants' futility arguments.

b. **Futility Analysis**

A proposed amendment "is futile if the amended complaint would not survive a motion to dismiss." County of Hudson v. Janiszewski, 351 F. App'x 662, 666 (3d Cir. 2009) (quoting Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000)); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'") (internal citation omitted). Therefore, "[t]he futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC, No. 11-7119 (WJM), 2014 U.S. Dist. LEXIS 46572, *9-10 (D.N.J. Apr. 4, 2014); In re Burlington Coat Factory Sec. Litig., 114 F. 3d 1410, 1434 (3d Cir. 1997); Allah v. Bartkowski, No. 11-3153(MAS), 2017 U.S. Dist. LEXIS 74826, *6

(D. N.J. May, 17 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court notes that Defendants bear the burden of establishing that Plaintiffs' proposed amendment is futile, and that, "given the liberal standard applied to the amendment of pleadings," that burden is a "heavy" one. Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp. 2d 761, 764 (D.N.J. 2000); accord Marjam, 2014 U.S. Dist. LEXIS 46572 at *10. "Therefore, '[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper.'" Schiano v. MBNA, No. 05-1771 (JLL), 2013 U.S. Dist. LEXIS 81440, *44 (D.N.J. Feb. 11, 2013) (quoting 6 Wright, Miller & Kane, Federal Practice and Procedure § 1487 (3d ed. 2012)). The Court will evaluate Defendants' futility arguments under these standards.

### i. **Plaintiffs' Proposed Patent Infringement Claims**

Plaintiffs seek to add a cause of action alleging that Defendants' 2017 Products infringe the '761 Patent. While Plaintiffs generally allege that "each of the 2017 Products infringe on at least one claim of the . . . '761 Patent", (PSAC ¶ 48, ECF No. 61-2), Plaintiffs factual allegations regarding that purported infringement are limited to discussion of the 2017 STAR LASER and STARS LASER products. (Id. ¶ 50). To the extent Plaintiffs also seek to allege that the NORTHERN LIGHTS LASER and/or GALAXY LASER products infringe the '761 Patent, such claims are facially deficient, as Plaintiffs have not alleged any factual basis for them. The Court will therefore limit its infringement analysis regarding the '761 Patent to the 2017 STAR LASER and STARS LASER products.

Plaintiffs also seek to amend their existing claims regarding the '775 Patent to accuse each of the 2017 Products of infringement. The Court clarifies that Plaintiffs have not alleged that any of the 2017 Products infringed the '673 Patent. (See generally, PSAC, ECF No. 61-2). As such, issues regarding the '673 patent are not properly before the Court.

The Court further notes that Plaintiffs seek to assert both "direct" and "indirect" infringement claims against Defendants, (id. ¶¶ 75-81), who argue that both types of proposed infringement claims would be futile. (Def. Br. at 4-16, ECF No. 65). Finally, while Plaintiffs allege that Defendants acted willfully when infringing the patents at issue, (PSAC ¶ 52, ECF No. 61-2), Defendants challenge the sufficiency of those allegations. (Def. Br. at 14-16, ECF No. 65). The Court will address each of these issues in turn.

### A. Proposed Direct Infringement Claims

In asserting direct infringement claims against Defendants, Plaintiffs are invoking 35 U.S.C. § 271(a), which provides, in pertinent part: "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." Within the context of these claims, it bears noting that the December 1, 2015 amendments to the Federal Rules of Civil Procedure abrogated both Rule 84 and Form 18 of the Appendix of Forms to the Rules. See, e.g., Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1377 (Fed. Cir. 2017); Telebrands Corp. v. Ragner Tech. Corp., Civil Action No. 15-3163 (ES), 2016 U.S. Dist. LEXIS 114436, at *6-7 (D.N.J. Aug. 25, 2016).[4] For the purposes of this motion, it suffices to say that the 2015

---

[4] Former Rule 84 provided, in pertinent part, that "'[t]he Forms in the Appendix . . . illustrate the simplicity and brevity that these rules contemplate.'" Robern, Inc. v. Glasscrafters, Inc., 206 F. Supp. 3d 1005,1008 (D.N.J. 2016) (quoting Fed. R. Civ. P. 84). Form 18 from the Appendix, in turn, "was titled 'Complaint for Patent Infringement' and provided a sample allegation of direct infringement." Lifetime Indus. Inc., 869 F.3d at 1376. In light of Rule 84's explicit endorsement

8

amendment "'means that claims of direct infringement are now also subject to the Twombly/Iqbal pleading standard.'" Ragnar Tech Corp. at * 7 (quoting RAH Color Techs. LLC v. Ricoh USA, Inc., 194 F. Supp. 3d 346, 350 (E.D. Pa. 2016)); accord Robern, 206 F. Supp. 3d at 1010 ("Thus, the Iqbal/Twombly standard controls."). Therefore, while a party asserting a direct patent infringement claim need not "'prove its case at the pleading stage'", Lifetime Indus. Inc., 869 F.3d at 1379 (quoting R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission & Processing Sys. Patent Litig.), 681 F.3d 1323, 1339 (Fed. Cir. 2012)), its complaint must "place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" Id. (quoting K-Tech, 714 F.3d at 1284) (ellipses in original).

Evaluating the sufficiency of direct infringement allegations following the abrogation of Rule 84 and Form 18, Judges in this District have provided some guidance on the level of factual detail necessary to render a direct infringement claim sufficiently "plausible" to withstand an Iqbal/Twombly challenge. For instance, in Robern, the Hon. John M. Vazquez, U.S.D.J. found that the plaintiff's infringement claims were insufficient where it simply named the defendants' allegedly infringing products, and stated, in conclusory terms, that those products infringed a patent, but provided no factual description regarding the alleged infringement, let alone any indication of the specific patent claims at issue. See 206 F.3d at 1011. Similarly, in Ragner Tech. Corp., the Hon. Esther Salas, U.S.D.J. found that a counterclaim stated a plausible cause of action for direct infringement where it: (1) described the accused products; (2) described "the functionalities of those products that allegedly infringe[d]" the patents at issue; (3) alleged that the

---

of the approved forms, "until December 1, 2015, [direct infringement] complaints that complied with Form 18 were 'effectively immunized' . . . from challenges to the adequacy of their pleading. Id. at 1377 (quoting K-Tech Telecomms., Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1283 (Fed. Cir. 2013)).

accused products met one or more claims of that patents; (4) featured a copy of the patents at issue as an exhibit; and (5) alleged what was claimed by each patent. 2016 U.S. Dist. LEXIS 114436 at *14.

Evaluating Plaintiffs' direct infringement claims in light of the guidance set forth in Robern and Ragner Tech Corp., this Court finds that Plaintiffs have stated a plausible entitlement to relief with regard to their proposed claims for direct infringement of both the '775 Patent and '761 Patent. Specifically, the Court acknowledges that Plaintiffs: (1) generally describe the patents and the relevant claims of those patents; (PSAC ¶¶ 15-16, 19-20, ECF No. 61-2); (2) annex copies of those patents as exhibits to their proposed pleading; (id. at Exs. A, C); (3) identify Defendants' allegedly infringing products; (id. ¶¶ 49-50); (4) specify the patent claims that those products allegedly infringe; (id.); and (5) generally describe the allegedly infringing functionalities of those products. (Id.). The Court therefore finds that Plaintiffs' proposed direct infringement claims would not be futile. As Defendants have not asserted any other bases for denying Plaintiffs' motion, the Court will grant Plaintiffs leave to amend their pleading to assert those claims.[5]

---

[5] The Court acknowledges Defendants' argument that Counts One and Three of the PSAC refer to the "Infringing Product", which is a term Plaintiffs have not defined elsewhere in their pleading. (Def. Br. at 7, ECF No. 65). Defendants' point is valid. Plaintiffs' use of that defined term appears to be a holdover from the First Amended Complaint, as it no longer exists in the PSAC. (Compare Am. Compl. ¶ 26, ECF No. 8 with PSAC ¶ 29-30, ECF No. 61-2 (replacing "Infringing Products" with "Initial Infringing Products" and referring, collectively, to all of Defendants' products at issue as the "Accused Products")). While that apparent drafting error does not promote clarity, Plaintiffs have, as the Court noted above, elsewhere specifically identified the products that allegedly infringe on the patents at issue. The Court will therefore infer that, when using the term "Infringing Product" in Counts One and Three of the PSAC, Plaintiffs were referring to those particular products. For the sake of clarity, however, Plaintiffs must revise the "Infringing Product" language when filing their amended pleading so that they instead refer explicitly (and solely) to the products that they allege infringe each patent.

## B. Proposed Indirect Infringement Claims

Plaintiffs also seek to amend their pleading to include claims that Defendants indirectly infringed the '775 Patent and '761 Patent in connection with the 2017 Products. (PSAC ¶¶ 62, 78, ECF No. 61-2). Specifically, Plaintiffs allege that Defendants "contributed to the infringement" of those patents "and/or actively induced others to infringe [those patents] by encouraging, marketing and promoting the use, manufacture, importation, offer for sale, and sale" of the allegedly infringing products. (Id.). Plaintiffs have not pled sufficient facts to set forth plausible claims for contributory infringement or induced infringement.

Plaintiffs' claim for contributory infringement is based on 35 U.S.C. § 271(c), which provides:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

With regard to claims for contributory infringement, the United States Court of Appeals for the Federal Circuit has observed:

> Contributory infringement occurs, *inter alia*, when a party sells "a component of a patented . . . combination . . . constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." We have held that contributory infringement requires "only proof of a defendant's *knowledge*, not *intent*, that his activity cause infringement."

Lifetime Indus., Inc., 869 F.3d at 1381 (internal citations omitted) (emphases and ellipses in original). Put slightly differently:

11

> To state a claim for contributory infringement, a Plaintiff must plead facts showing that: (1) Defendant knew that the [a]ccused [p]roducts are material to practicing the invention and have no substantial non-infringing uses; (2) Defendant knew that the [a]ccused [p]roducts were especially made or especially adapted to infringe the [a]sserted [p]atents; and (3) a third party used the accused products to directly infringe the product.

Straight Path IP Grp., Inc. v. Vonage Holdings Corp., Civil Action No. 14-502 (JLL), 2014 U.S. Dist. LEXIS 42466, at *9 (D.N.J. Mar. 26, 2014) (Linares, C.J.) (citing DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1303 (Fed. Cir. 2006); Hoffmann La Roche Inc. v. Apotex Inc., Civil Action No. 07-4417 (SRC), 2010 U.S. Dist. LEXIS 92264, at *24-25 (D.N.J. Sep. 2, 2010)). Here, Plaintiffs have not alleged any facts in support of their claims for contributory infringement, let alone facts sufficient to establish the aforementioned elements, and instead refer to that claim in purely conclusory terms. (PSAC ¶¶ 62, 78, ECF No. 61-2). Therefore, to the extent Plaintiffs seek leave to amend their pleading to include contributory negligence claims regarding the 2017 Products, those claims would be futile, and the Court must deny Plaintiffs' motion without prejudice.

Plaintiffs' proposed induced infringement claims are similarly conclusory. Such claims are based upon 35 U.S.C. § 271(b), which states: "Whoever actively induces infringement of a patent shall be liable as an infringer." As the United States Court of Appeals for the Federal Circuit has explained: "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" Lifetime Indus., Inc., 869 F.3d at 1379 (quoting Bill of Lading, 681 F.3d at 1339) (brackets in original). Plaintiffs have not pled facts establishing any of these elements, and instead allege, in general terms, that Defendants induced unnamed "others" to commit unspecified acts of infringement by "encouraging, marketing, and promoting the use, manufacture, importation, offer

for sale, and sale of the Infringing Product." (PSAC ¶¶ 62, 78, ECF No. 61-2). Such allegations are facially insufficient and would not survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court therefore denies Plaintiffs' motion, without prejudice, to the extent they seek to add induced infringement claims regarding the 2017 Products.

### C. <u>Allegations of Willful Infringement</u>

In their First Amended Complaint, Plaintiffs alleged, on information and belief, that "Defendants' adoption of the inventions claimed in the '775 Patent and the '673 Patent is deliberate and intentional and with full knowledge of Telebrands' rights." (First Am. Compl. ¶ 32, ECF No. 8). Plaintiffs included that allegation to trigger the "increased damages" provision set forth in 35 U.S.C. § 284 ("[T]he court may increase the damages up to three times the amount found or assessed."). Plaintiffs now seek leave to amend that allegation to include the '761 Patent as well and, ostensibly, to assert willful infringement of the '775 Patent with regard to the 2017 Products. (PSAC ¶ 52, ECF No. 61-2).

Defendants argue that Plaintiffs' allegations of willful infringement fail in their entirety. (Def. Br. at 14-15, ECF No. 65). The Court reiterates, however, that Plaintiffs' allegations regarding the willfulness of Defendants' alleged infringement of the '775 Patent and '673 Patent appeared in the previous iteration of Plaintiffs' pleading, and, at least with respect to Defendants' previous products, are therefore not properly before this Court. The Court must limit its inquiry to the sufficiency of Plaintiffs' allegations concerning the '761 patent, as well as Plaintiffs' allegations of willful infringement of the '775 Patent with regard to the 2017 Products <u>only</u>. Defendants argue that Plaintiffs have failed to allege facts sufficient to meet the standard that the United States Supreme Court set forth in <u>Halo Elecs., Inc. v. Pulse Elecs., Inc.</u>, 136 S. Ct. 1923 (2016). This Court agrees that Plaintiffs have not pled sufficient facts to establish a plausible

entitlement to enhanced damages with regard to the '761 Patent, but have done so with respect to the '775 Patent (in connection with the 2017 Products).

In In re Seagate Technology, LLC, 497 F.3d 1360 (2007) (Fed. Cir.), "the United States Court of Appeals for the Federal Circuit adopted a two-part test for determining when a district court may increase damages pursuant to [35 U.S.C. § 284]." Halo Elecs., Inc., 136 S. Ct. at 1928. In Halo Elecs., Inc., the Supreme Court did away with that test, and found that the decision of whether to impose enhanced damages under § 284 must be left to the discretion of the district courts. See, e.g., id. at 1931-32, 1935. The Court noted that, "[i]n applying this discretion, district courts are 'to be guided by [the] sound legal principles' developed over nearly two centuries of application and interpretation of the Patent Act. Those principles channel the exercise of discretion, limiting the award of enhanced damages to egregious cases of misconduct beyond typical infringement." Id. at 1935 (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 139 (2005) (brackets in original)). Summarizing those guiding principles, the Court observed that "[t]he sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed— characteristic of a pirate." Id. at 1932.

Here, Plaintiffs allege that Defendants' "adoption of the inventions claimed in the . . . '761 Patent is deliberate and intentional and with full knowledge of Telebrands' rights." (PSAC ¶ 52, ECF No. 61-2). The only other allegation that Plaintiffs make regarding Defendants' purported knowledge of the '761 Patent is that Defendants were "put on notice of [that] Patent at least as early as the filing of the Complaint in this Action." (Id. ¶ 79). Plaintiffs' "notice" allegation, however, does not make sense in light of their other allegations. If the Court were to take the statement literally, that would mean that Plaintiffs suggest that they put Defendants on notice of

14

the '761 Patent by serving the Complaint on or about May 12, 2017, (ECF Nos. 9-10), despite the fact that the '761 Patent did not issue until September 5, 2017, several months later. (PSAC ¶ 19, ECF No. 61-2). If the Court instead takes the statement to mean that Plaintiffs put Defendants on notice of the '761 Patent by filing the PSAC, that runs directly contrary to Plaintiffs' allegations of Defendants' prior knowledge. As Plaintiffs have not alleged any other facts suggesting that Defendants knew of the '761 Patent prior to their alleged infringement, let alone that Defendants' conduct with regard to that patent rose to the level that the Supreme Court discussed in Halo Elecs., Inc., Plaintiffs have not established a plausible entitlement to enhanced damages pursuant to 35 U.S.C. § 284. The Court must therefore deny Plaintiffs' motion, without prejudice, to the extent they seek enhanced damages in connection with Defendants' alleged infringement of the '761 Patent.

The Court's analysis is different with regard to Plaintiffs' new claims concerning Defendants' alleged infringement of the '775 Patent. Plaintiffs allege that Defendants have had notice of the '775 Patent since their receipt of the Complaint in this matter, (PSAC ¶ 63, ECF NO. 61-2), and yet still created and sold the allegedly infringing 2017 Products. (Id. ¶¶ 30, 48-49). The Court finds that these allegations, taken as true, are sufficient to establish a plausible entitlement to enhanced damages under the standards that the Supreme Court discussed in Halo Elecs., Inc.. The Court will therefore grant Plaintiffs' motion to the extent they seek to amend their pleading to allege that Defendants willfully violated the '775 Patent in connection with Defendants' 2017 Products.

### ii.     Trademark Infringement Claims Regarding the 2017 Products

Plaintiffs seek to expand their existing trademark infringement claim to include one of 2017 Products: the STARS LASER. (PSAC ¶¶ 53-55, ECF No. 61-2). Defendants do not oppose

this aspect of Plaintiffs' motion. (See generally, Def. Br., ECF No. 65). The Court will therefore grant Plaintiffs' motion to the extent they seek to include the STARS LASER product as part of their trademark infringement claim.

### iii. False Advertising Claim Under Section 43(a) of the Lanham Act

Plaintiffs also seek to assert a claim that Defendants violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in connection with information listed on the packaging of the GALAXY LASER and NORTHERN LIGHTS LASER products, as well as within the operating instructions for those products. (PSAC ¶¶ 92-99, ECF No. 61-2). "Section 43(a) is intended to provide a private remedy 'to a commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising.'" Joint Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164, 180 (3d Cir. 2001) (quoting Serbin v. Ziebart Int'l Corp., 11 F.3d 1163, 1175 (3d Cir. 1993)). The United States Supreme Court has clarified that, to have standing to pursue a Section 43(a) claim, a litigant's interests must fall within the "zone of interests" protected by the statute, and the litigant must have suffered injuries that were proximately caused by a violation of the statute. Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1388-1391 (2014). With regard to the "proximate cause" element, the Court elaborated that a Section 43(a) plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." Id. at 1391. Assuming that a plaintiff meets these standing requirements, the District Court will evaluate the merits of its statutory claim. The United States District Court for the District of New Jersey has described the elements of a Section 43(a) false advertising claim as follows:

> To state a claim for false advertising under the Lanham Act, "a plaintiff must allege that: (1) the defendant made false or misleading

16

statements about the nature, characteristics, qualities, geographic origins of his or another's goods, services, or commercial activities in commercial advertising or promotion; (2) there is actual deception or a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff."

Master Cutlery, Inc. v. Panther Trading Co., No. 12-4493 (JLL), 2013 U.S. Dist. LEXIS 120767, at *12 (D.N.J. Aug. 26, 2013) (Linares, C.J.) (quoting Creston Elecs. Inc. v. Cyber Sound & Sec., Inc., No. 11-3492, 2012 U.S. Dist. LEXIS 16132, at *36 (D.N.J. Feb. 9, 2012)).

Here, Plaintiffs allege that Defendants made two sets of actionable misstatements with regard to the GALAXY LASER and NORTHERN LIGHTS LASER products. First, Plaintiffs contend that Defendants falsely stated, on their product packaging, that those products each had a maximum power output of less than 5mW, while Plaintiffs' independent testing revealed that the products actually emitted laser radiation as high as 7.1mW (the GALAXY LASER product) and 53.6mW (the NORTHERN LIGHTS LASER product), both in excess of the maximum output allowed under the applicable FDA guidelines. (Id. ¶¶ 32-39). Second, Plaintiffs allege that the "Safety Instructions included with the GALAXY LASER and NORTHERN LIGHTS LASER products mislead a consumer into believing that if the instructions are followed, the unit will be safe to use", despite the fact the those products emit unsafe levels of laser radiation. (Id. ¶ 40). Plaintiffs contend that "purchasers have been and will continue to be induced . . . to purchase Defendants' GALAXY LASER and NORTHERN LIGHTS LASER products" based on misstatements in the products' packaging and instructions, (id. ¶ 98), and that Plaintiff Telebrands has been injured "by diversion of customers from Telebrands to Defendants and by the lessening of the goodwill Telebrands' products enjoy with the buying public". (Id. ¶ 99).

Defendants argue that Plaintiffs have not alleged sufficient facts to establish that they suffered an injury as a result of Defendants' alleged misstatements. (Def. Br. at 16-19, ECF No. 65). Defendants therefore contend that Plaintiffs lack standing to pursue their false advertising claim, (id. at 16-17), and have otherwise failed to state a plausible entitlement to relief on that cause of action. (Id. ¶¶ 18-19). Defendants also argue that, as Plaintiffs are essentially alleging that Defendants have violated the FDA's guidelines, the Court should not permit Plaintiffs to litigate those alleged violations under the Lanham Act. (Id. at 19-22).

This Court agrees that Plaintiffs have not yet alleged facts that, if taken as true, would demonstrate that Defendants' conduct caused Plaintiff to lose sales or consumer goodwill. As noted above, Plaintiffs have alleged that Defendants made two types of misstatements. In the first, Defendants allegedly misrepresented the maximum energy output of the GALAXY LASER and NORTHERN LIGHTS LASER products on the packaging for those devices. (See, e.g., PSAC ¶ 39, ECF No. 61-2). Plaintiffs have not alleged, however, that the packaging characterized that information in any way (e.g., stating that the power output was "safe" or met any safety requirements). Moreover, Plaintiffs have not alleged that Defendants' packaging made any comparisons or references to Plaintiffs' products. Finally, Plaintiffs have not alleged how consumers might have acted differently had the packaging information been accurate, or, alternatively, if the packaging did not include any representations regarding power output. In short, Plaintiffs have not alleged how the alleged misstatements on Defendants' packaging persuaded consumers to purchase Defendants' products, let alone how those statements might have convinced consumers to purchase the GALAXY LASER or NORTHER LIGHTS products instead of Plaintiffs' offerings. In the second type of allege misstatement, Plaintiffs contend that the safety instructions included with Defendants' products give consumers the false impression that those

products will be safe if operated correctly when, in reality, both products actually emit potentially dangerous levels of energy. (See, e.g., id. ¶ 40). Plaintiffs have not, however, alleged that those safety instructions are available to consumers prior to their purchase and, in turn, have not alleged how such instructions might impact consumers' purchasing decisions. With regard to both types of alleged misstatements, there is a crucial, missing link between Defendants' actions and Plaintiffs' alleged harm.

The Court notes that, in their reply submission, Plaintiffs suggest that "[t]he dangerous nature of Defendants' products will harm Telebrands' sales and may ultimately destroy the market for decorative holiday laser lighting products." (Pl. Reply at 7, ECF No. 69). Plaintiffs have not yet sufficiently alleged such harm in their PSAC. While Plaintiffs cite to Paragraph 99 of the PSAC in support of their argument, that paragraph appears to concern the diversion of customers from Plaintiffs to Defendants, along with Plaintiffs' concomitant loss of consumer goodwill. (PSAC ¶ 99, ECF No. 61-2). If Plaintiffs intend to plead injuries suffered as a result of harm to the industry in general, they must add allegations making that clear. It would not be reasonable for the Court to infer such harm based on Plaintiffs' existing allegations.[6]

While Defendants contend that Plaintiffs' failure to sufficiently plead causation and damages both deprives Plaintiffs of standing to bring a Section 43(a) claim and renders that claim invalid on its merits, (Def. Br. at 16-22, ECF No. 65), it does not appear to matter how the Court characterizes its analysis. Plaintiffs' Section 43(a) claim fails in either case.[7] The Court must

---

[6] Plaintiffs allege elsewhere, for instance, that Defendants made the alleged misrepresentations in question to obtain an unfair competitive advantage in the industry. (Id. ¶ 41). Such allegations do not support the proposition that Defendants' actions may ultimately reduce the demand for holiday lighting products.

[7] The Court notes that, while the Supreme Court discussed both the statutory "zone of interests" and the concept of proximate cause when analyzing standing for Section 43(a) claims, Lexmark, 134 S. Ct. at 1388-91, only proximate cause is in legitimate dispute here.

19

therefore deny Plaintiffs' motion, without prejudice, to the extent they seek to assert a false advertising claim pursuant to Section 43(a) of the Lanham Act.[8]

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Leave to File a Second Amended Complaint, (ECF No. 61), is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**. An appropriate form of Order accompanies this Opinion.

JOSEPH A. DICKSON, U.S.M.J.

cc: Hon. Jose L. Linares, C.J.

---

[8] Though it need not reach the issue, the Court has also considered Defendants' argument that the Court must deny Plaintiffs' Section 43(a) claim as futile, as it represents an "attempt to circumvent the FDA's regulation of this subject matter to determine the relative safety levels of radiation for laser light products." (Def. Br. at 22, ECF No. 65). The Court rejects Defendants' argument. The cases Defendants cite are inapplicable here, as Plaintiffs allege that Defendants made literally false statements (i.e., the maximum energy output of the GALAXY LASER and NORTHER LIGHTS products) to the public, and that allegation is not dependent on the application or interpretation of any FDA regulation. Defendants have therefore not carried their "heavy burden" of establishing that Plaintiffs' claims are futile on these grounds. Pharmaceutical Sales & Consulting Corp., 106 F. Supp. 2d at 764.